[Cite as *State v. Wright*, 2012-Ohio-1809.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO

      Plaintiff-Appellee

-vs-

DALE C. WRIGHT

      Defendant-Appellant

JUDGES:
Hon. William B. Hoffman, P. J.
Hon. Sheila G. Farmer, J.
Hon. John W. Wise, J.

Case No. CT2011-0046

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal Appeal from the Court of Common Pleas, Case No. CR2010-0182 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | April 23, 2012 |

APPEARANCES:

For Plaintiff-Appellee

RONALD L. WELCH
ASSISTANT PROSECUTOR
27 North Fifth Street, P. O. Box 189
Zanesville, Ohio 43702-0189

For Defendant-Appellant

DAVID A. SAMS
Box 40
West Jefferson, Ohio 43162

*Wise, J.*

{¶1}    Defendant-Appellant Dale C. Wright appeals his sentence and conviction on one count of child endangering and one count of murder following a jury trial in the Muskingum County Court of Common Pleas.

{¶2}    Plaintiff-Appellee is the State of Ohio.

## STATEMENT OF THE CASE AND FACTS

{¶3}    On August 1, 2010, Community Ambulance Services responded to a 9-1-1 call at 2148 East Pike that came in at approximately 12:17 a.m.  The call came in as a "child not breathing". (T. at 201).  Upon arriving at the scene, paramedic Robin Lynn Fisher and EMT Lynn Dalrymple found Appellant Dale Wright standing in the front yard holding five month old Dash Wright. (T. at 202).  The medics took the infant from Appellant and confirmed that he was not breathing and had no pulse. (T. at 204). EMT Dalrymple recalled that as she was running to the squad with the baby, Appellant told her that the baby had vomited and that he had tried to give him a bath.  (T. at 221-222).

{¶4}    Washington Township volunteer firefighters Casey Parrett and Adam Siddle also arrived on the scene. (T. at 205, 222). Firefighter Siddle drove the squad to Genesis Hospital while Firefighter Parrett assisted medics Fisher and Dalrymple with CPR. Id. Paramedic Phillip Koster also caught up with the ambulance and joined the medics to assist in treating the child. (T. at 231).

{¶5}    The squad arrived at the hospital at approximately 12:28 a.m.  The child was still unresponsive, having showed no signs of life during the twelve minutes from when the squad arrived on the scene to when they arrived at the hospital.  (T. at 225).

{¶6}  Fisher and Dalrymple stated that the child never left their sight during that time period and that at no time did they drop him or strike his head on anything. (T. at 215, 225).  Koster also stated that from the time he got on the ambulance to when they arrived at the hospital, the child was never dropped, and he was never struck in the head. (T. at 233).

{¶7}  Upon arriving at the hospital, Dash was treated by Dr. Robert McCoy. (T. at 267-272). Dr. McCoy received a history regarding the patient's condition that was virtually identical to what Dep. Gearhart had received from the Defendant. Dr. McCoy conducted a thorough examination of Dash and ordered that Dash be administered epinephrine with the hope of generating a pulse. Dash also was being bagged as he was still not breathing on his own.

{¶8}  During the course of Dr. McCoy's examination, he discovered that the child had bleeding in the back of the eyes. This being a strong indicator of an abusive injury absent other traumatic explanation, Dr. McCoy contacted Children's Hospital and was advised that a CAT scan was necessary as well. Dr. McCoy's review of the CAT scan showed that there were multiple brain bleeds of varying age, as well as a skull fracture. Ultimately Dash was transferred to Children's Hospital in Columbus.

{¶9}  At Children's Hospital, Dash was examined and treated by a team of doctors, including several experts in the field of child abuse pediatrics, radiologists and an ophthalmologist. Dr. Farah Brink, an expert in the field of child abuse pediatrics, conducted a thorough physical examination of Dash, as well as reviewing the records provided by Genesis regarding Dash's treatment at that hospital. Dr. Brink noted that the child suffered from swelling of the brain, subdural bleeding within the brain, skull

fractures and retinal hemorrhages. Dr. Brink's treatment of Dash included exploring any possible reasons for the existence of these injuries including accidental causes or pre-existing conditions, but she found none. Dr. Brink testified that the injuries suffered by Dash Wright were the result of blunt impact trauma with a likely shaking mechanism. (T. at 483). Dr. Brink further testified that these types of injuries can occur in car accidents or high distance falls, but that the injuries Dash suffered were caused by the child's physical abuse. (T. at 490).

{¶10} On August 3, 2010, Dash Wright was pronounced dead. Dr. Kenneth Gerston of the Franklin County Coroner's Office performed the autopsy in this case. Dr. Gerston concluded that Dash Wright's cause of death was homicide. In his report, Dr. Gerston noted that a child that suffers the type of injuries that Dash had would have had immediate onset of symptoms meaning that Dash would not have wanted to eat or play, nor would he have been giggling, happy and smiling after the injury. (T. at 376). Finally, Dr. Gerston testified that Dash's cause of death was traumatic brain injury caused by blunt force. (T. at 386).

{¶11} While Dash was being treated at Children's Hospital, the Muskingum County Sheriff's Office conducted an investigation into Dash Wright's death which included interviews with the mother, Appellant, the coroner and medical personnel. Detectives also conducted a search of Appellant's residence on August 2, 2010.

{¶12} As a result of such investigation, Appellant Dale C. Wright was indicted on one count of child endangering, in violation of R.C. §2929.11(B)(1) and one count of murder, in violation of R.C. §2903.02(B).

{¶13} On January 14, 2011, Appellant filed a motion to suppress evidence.

**{¶14}** On January 29, 2011, the trial court conducted a hearing on Appellant's motion to suppress.

**{¶15}** On June 27, 2011, a jury trial commenced in this matter.

**{¶16}** On June 29, 2011, the jury returned a guilty verdict on both counts as charged in the indictment.

**{¶17}** On August 1, 2011, the trial court sentenced Appellant to fifteen (15) years to life.

**{¶18}** Defendant-Appellant now appeals, assigning the following errors for review:

## ASSIGNMENTS OF ERROR

**{¶19}** "I. THE TRIAL COURT ERRED IN NOT SUPPRESSING EVIDCENCE [SIC] OBTAINED IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONS.

**{¶20}** "II. THE INDICTMENT WAS STRUCTURALLY INSUFFICIENT AND WAS IMPROPERLY AMENDED IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONS.

**{¶21}** "III. THE JUDGMENT WAS BASED ON INSUFFICIENT EVIDENCE IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONS.

**{¶22}** "IV. THE DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL BY THE ADMISSION OF INADMISSIBLE, IRRELEVANT AND PREJUDICIAL EVIDENCE IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONS.

**{¶23}** "V. THE DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL BY PROSECUTORIAL MISCONDUCT IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONS.

{¶24} "VI. THE JURY INSTRUCTIONS WERE STRUCTURALLY INSUFFICIENT IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONS.

{¶25} "VII. THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE STATE/FEDERAL CONSTITUTIONS.

{¶26} "VIII. THE DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONS.

{¶27} "IX. THE DEFENDANT WAS DENIED A FAIR TRIAL BY STRUCTURAL AND CUMULATIVE ERROR IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONS."

## I.

{¶28} In his first Assignment of Error, Appellant argues that the trial court erred in denying his motion to suppress. We disagree.

{¶29} More specifically, Appellant argues that the warrantless search of his residence which resulted in recovery of the blanket upon which the child had been found unresponsive, along with photographs of the basement, was unconstitutional.

{¶30} Appellate review of a trial court's decision to grant or deny a motion to suppress involves a mixed question of law and fact. *State v. Long* (1998), 127 Ohio App.3d 328, 713 N.E.2d 1. During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks,* 75 Ohio St.3d 148, 1996-Ohio-134, 661 N.E.2d 1030. A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Metcalf* (1996), 111 Ohio

App.3d 142, 675 N.E.2d 1268. Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141.

{¶31} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See *State v. Fanning* (1982), 1 Ohio St.3d 19, 437 N.E.2d 583; and *State v. Klein* (1991), 73 Ohio App.3d 486, 597 N.E.2d 1141. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Claytor,* (1993) 85 Ohio App.3d 623, 620 N.E.2d 906 and *State v. Curry* (1994), 95 Ohio App.3d 93, 641 N.E.2d 1172

{¶32} The Fourth Amendment provides:

{¶33} "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and

particularly describing the place to be searched, and the persons or things to be seized."

**{¶34}** The text of the Amendment thus expressly imposes two requirements. First, all searches and seizures must be reasonable. Second, a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity. See *Payton v. New York,* 445 U.S. 573, 584, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

**{¶35}** In *Kentucky v. King* 131 S.Ct. 1849, 1856-1857 (U.S.Ky.,2011), the United States Supreme Court reviewed the Fourth Amendment and the exceptions thereto, stating:

**{¶36}** "Although the text of the Fourth Amendment does not specify when a search warrant must be obtained, this Court has inferred that a warrant must generally be secured. "It is a 'basic principle of Fourth Amendment law,' " we have often said, " 'that searches and seizures inside a home without a warrant are presumptively unreasonable.' " *Brigham City v. Stuart,* 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006) (quoting *Groh v. Ramirez,* 540 U.S. 551, 559, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004)). But we have also recognized that this presumption may be overcome in some circumstances because "[t]he ultimate touchstone of the Fourth Amendment is 'reasonableness.' " *Brigham City, supra,* at 403, 126 S.Ct. 1943; see also *Michigan v. Fisher,* 558 U.S. ——, ——, 130 S.Ct. 546, 548, 175 L.Ed.2d 410 (2009) *(per curiam).* Accordingly, the warrant requirement is subject to certain reasonable exceptions. *Brigham City, supra,* at 403, 126 S.Ct. 1943.

{¶37} "One well-recognized exception applies when " 'the exigencies of the situation' make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona,* 437 U.S. 385, 394, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); see also *Payton, supra,* at 590, 100 S.Ct. 1371 ("[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant").

{¶38} "This Court has identified several exigencies that may justify a warrantless search of a home. See *Brigham City,* 547 U.S., at 403, 126 S.Ct. 1943. Under the "emergency aid" exception, for example, "officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Ibid.;* see also, *e.g., Fisher, supra,* at ——, 130 S.Ct. at 548 (upholding warrantless home entry based on emergency aid exception). Police officers may enter premises without a warrant when they are in hot pursuit of a fleeing suspect. See *United States v. Santana,* 427 U.S. 38, 42–43, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976). And - what is relevant here - the need "to prevent the imminent destruction of evidence" has long been recognized as a sufficient justification for a warrantless search. *Brigham City, supra,* at 403, 126 S.Ct. 1943; see also *Georgia v. Randolph,* 547 U.S. 103, 116, n. 6, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006); 1857 *Minnesota v. Olson,* 495 U.S. 91, 100, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990)."

{¶39} Consent searches are also part of the standard investigatory techniques of law enforcement. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 231, 93 S.Ct. 2041, 2050, 36 L.Ed .2d 854, 865

**{¶40}** Upon review, we find that the trial court heard evidence from Detective Welker that when they went to the Wright residence to secure what was believed to be the crime scene, they learned that Appellant was present at the scene but was failing to respond to their knock at the door. Det. Welker stated that they were concerned that evidence could be lost or destroyed before they could provide probable cause to a judge and that they therefore entered the premises based on such exigent circumstances. (Supp. T. at 13-14). Det. Welker testified that upon locating Appellant, they advised him that the officers were there to secure the house for a search and that Appellant advised the officers that he was willing to cooperate and signed a consent to search waiver. (Supp. T. at 18-21).

**{¶41}** The trial court heard further testimony from Det. Welker that at no time was Appellant handcuffed, placed under arrest or threatened, and that he remained in the house and engaged in conversation with Det. Welker during the search. Id.

**{¶42}** At trial, Det. Welker also testified that upon entering the residence, Appellant himself admitted a search warrant would not be necessary as "he had signed a consent to search earlier that day", and "would be willing to sign another one." Tr. at 420. Accordingly, Det. Welker's search of the dryer, which occurred after Appellant's admission he had signed a consent to search earlier in the day, was not in violation of Appellant's Fourth Amendment rights. Therefore, the trial court did not err in denying Appellant's motion to suppress.

**{¶43}** Appellant's first Assignment of Error is overruled.

**II.**

**{¶44}** In his second Assignment of Error, Appellant argues that the indictment was structurally insufficient. We disagree.

**{¶45}** More specifically, Appellant argues that that element of "recklessness" was not contained in the indictment in either the murder or the child endangering count and, therefore, such indictment was deficient.

**{¶46}** The Ohio Supreme Court has held that "[a]n indictment that charges an offense by tracking the language of the criminal statute is not defective for failure to identify a culpable mental state when the statute itself fails to specify a mental state." *State v. Horner,* 126 Ohio St.3d 466, 935 N.E.2d 26, 2010-Ohio-3830, at paragraph one of the syllabus.

**{¶47}** Upon review, we find that the indictment in the case *sub judice* is not defective for failure to include a *mens rea* element for murder or child endangering because the indictment tracked the language of the Ohio Revised Code, which does not specify a *mens rea*.

**{¶48}** Further, a review of the jury instructions in this matter reveals that the jury was properly instructed as to the recklessness element on these charges.

**{¶49}** Based on the foregoing, we find Appellant's second Assignment of Error not well-taken and overrule same.

**III., VII.**

**{¶50}** In his third and seventh Assignments of Error, Appellant argues that the verdict was against the manifest weight and sufficiency of the evidence. We disagree.

**{¶51}** The function of an appellate court on review is to assess the sufficiency of the evidence "to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. In making this determination, a reviewing court must view the evidence in the light most favorable to the prosecution. *Id.; State v. Feliciano* (1996), 115 Ohio App.3d 646, 652, 685 N.E.2d 1307, 1310–1311.

**{¶52}** While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest-weight challenge questions whether the state has met its burden of persuasion. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390, 678 N.E.2d 541, 548-549 (Cook, J., concurring). In making this determination, we do not view the evidence in the light most favorable to the prosecution. Instead, we must "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the Trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins, supra*, 78 Ohio St.3d at 387, 678 N.E.2d 541. (Quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins, supra*. In *State v. Thompkins, supra* the Ohio Supreme Court further held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a

concurring majority of a panel of a court of appeals reviewing the judgment is necessary." 78 Ohio St.3d 380, 678 N.E.2d 541 at paragraph three of the syllabus.

**{¶53}** In this case, Appellant was convicted of child endangering, in violation of R.C. §2919.22(B)(1) and murder, in violation of R.C. §2903.02(B), which provide:

**{¶54}** R.C. §2919.22 <u>Endangering children</u>

**{¶55}** "(A) ***

**{¶56}** "(B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:

**{¶57}** "(1) Abuse the child;

**{¶58}** " *** "

**{¶59} R.C. §2903.02 <u>Murder</u>**

**{¶60}** "(A) ***

**{¶61}** "(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code."

**{¶62}** Although not stated in R.C. §2919.22, recklessness is the culpable mental state for the crime of child endangering. *State v. O'Brien* (1987), 30 Ohio St.3d 122, 508 N.E.2d 144; *State v. Conley,* Perry App. No. 03-CA-18, 2005-Ohio-3257 at ¶ 20. Recklessness is defined in R.C. 2901.22(C), which states:

**{¶63}** "(C) A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause

a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

{¶64} Here, Appellant argues that the State failed to present sufficient evidence as to Dash Wright's death and the proximate cause of his death.

{¶65} Upon review, we find that the record is replete with expert testimony that Dash Wright died and that his death was caused by traumatic brain injury. (T. at 340-341, 395). The coroner, Dr. Gerston, testified that Dash Wright died from a blow to the head and that his death was the result of homicide. *Id.* Dr. Gerston further explained necrosis of the brain stem and that such condition occurs when swelling of the brain causes pressure on the brain stem until oxygen flow is cut off. (T. at 395).

{¶66} Additionally, the jury heard from Dr. Brink that Dash Wright's brain injuries were the result of "blunt impact trauma with likelt a shaking mechanism as well." (T. at 483). She further testified that he had retinal hemorrhages, which in combination with the head bleeding, suggested shaking. *Id.*

{¶67} Dr. Leder also testified that Dash Wright died from a severe blow to the head and that he had been shaken. (T. at 666). Likewise, Dr. Shuman testified that it was his conclusion that Dash's death was the result of homicide. (T. at 629).

{¶68} As to proximate cause, a review of the jury charges shows that the jury was instructed:

{¶69} "The State charges that the act or failure to act of the defendant caused death. Cause is an essential element of the offense. Cause is an act or failure to act

which in the natural and continuous sequence directly produces the death and without which it would not have occurred." (T. at 730).

**{¶70}** The jury also heard testimony from Rosemary Elson, Dash's mother, that he was alert, happy and playful earlier in the day. (T. at 288-290). She further testified that Dash was behaving normally when she went to bed and left him alone with Appellant. (T. at 291-293). She testified that when she saw Dash ten to fifteen minutes later, when Appellant began screaming for her, Dash was limp and he was not breathing. (T. at 293).

**{¶71}** The jury also heard testimony that Dash was not developmentally able to crawl out of his "pack and play" crib or injure himself with enough force to cause his injuries. (T. at 628).

**{¶72}** Based on the foregoing and the complete record in this matter, we find that there was sufficient evidence to find that Appellant committed the crimes of endangering children and murder. Further, based on the evidence and the record, this Court cannot say that the jury lost its way and created a manifest miscarriage of justice in finding Appellant guilty as charged.

**{¶73}** Appellant's third and seventh Assignments of Error are overruled.

**IV.**

**{¶74}** In his fourth Assignment of Error, Appellant argues that the trial court erred in admitting irrelevant, inadmissible and prejudicial evidence at trial. We disagree.

**{¶75}** Appellant argues that the admission of the autopsy photographs and the photographs taken in the basement were highly prejudicial and irrelevant.

{¶76} Under Evidence Rules 403 and 611(A), the admission of photographs is left to the sound discretion of the trial court. *State v. Landrum* (1990), 53 Ohio St.3d 107, 559 N.E.2d 710. *See also State v. Maurer* (1984), 15 Ohio St.3d 239, 473 N.E.2d 768. Under Evidence Rule 403(A), the probative value of the evidence must be weighed against the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. Evid.R. 611(A) further provides, in relevant part, the trial court "shall exercise reasonable control over the mode and order of ... presenting evidence so as ... to make the ... presentation effective for the ascertainment of the truth" and to "avoid needless consumption of time." "Although a photograph may be rendered inadmissible by its inflammatory nature, the mere fact that it is gruesome or horrendous is not sufficient to render it inadmissible if the trial court, in the exercise of its discretion, feels that it would prove useful to the jury." *State v. Woodard* (1966), 6 Ohio St.2d 14, 25, 215 N.E.2d 568. "The real question is whether the probative value of such photographs is outweighed by the danger of prejudice to the defendant." *Woodard* at 25, 215 N.E.2d 568.

{¶77} Here, the jury was shown five autopsy photographs. These photographs were used during the medical testimony to describe and explain Dash Wright's injuries. As such, we do not find that they were more prejudicial than probative.

{¶78} The jury was also shown photographs taken in the basement where Dash Wright was injured. Two of these photographs showed animals in the basement. However, upon having reviewed the record, this Court finds no inflammatory or prejudicial statements concerning such animals.

{¶79} This Court finds that the trial court did not err in admitting the photographs in this case.

**{¶80}** Appellant's fourth Assignment of Error is overruled.

**V.**

**{¶81}** In his fifth Assignment of Error, Appellant argues that he was denied a fair trial by prosecutorial misconduct.  We disagree.

**{¶82}** Appellant contends that prosecutorial misconduct resulted in reversible error. Specifically, Appellant contends that the State tried to lessen the burden of proof by mischaracterizing proof beyond a reasonable doubt during voir dire.  Appellant also argues that the State's comments to the jury during closing argument regarding the use of common sense, the *mens rea* element of recklessness for the crime of child endangerment, and the fact that motive is not an element of an offense were error. He further argues that the State improperly commented on the condition of Appellant's basement and the presence therein of alligators, rats and snakes during opening statements.  Additionally, Appellant assigns error to the State's cross-examination of his medical expert.

**{¶83}** During opening statement, counsel is accorded latitude and allowed fair comment on the facts to be presented at trial. See *Maggio v. Cleveland,* 151 Ohio St. 136, 84 N.E.2d 912 (1949), paragraph two of the syllabus. *See, also*, *State v. LaMar,* 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 126. *State v. Leonard,* 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 157. In addition, a prosecutor is entitled to a certain degree of latitude in closing arguments. *State v. Liberatore,* 69 Ohio St.2d 583, 589, 433 N.E.2d 561(1982). Thus, it falls within the sound discretion of the trial court to determine the propriety of these arguments. *State v. Maurer,* 15 Ohio St.3d 239, 269, 473 N.E.2d 768(1984). A conviction will be reversed only where it is clear beyond a

reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty. *State v. Benge,* 75 Ohio St.3d 136, 141, 1996-Ohio-227, 661 N.E.2d 1019. Furthermore, "[i]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." *Donnelly v. DeChristoforo,* 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).

{¶84} In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial. *Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144(1986).

{¶85} We have reviewed the record in this case and find the complained of instances do not equate to any prejudice to Appellant.

{¶86} Appellant's fifth Assignment of Error is overruled.

**VI.**

{¶87} In his sixth Assignment of Error, Appellant argues that jury instructions were structurally insufficient. We disagree.

{¶88} Appellant argues again that the court failed to define death and that the element of "recklessness" was not defined with respect to the murder charge.

{¶89} Upon review, we find that the jury herein was properly instructed by the trial court that to find Appellant guilty of murder, it must find beyond a reasonable doubt that Appellant caused the death of Dash Wright as a proximate cause of committing or attempting to commit the offense of child endangering. (T. at 730). The jury was further instructed that, in order to find Appellant guilty of child endangering, the State had to prove beyond a reasonable doubt that Appellant "recklessly" abused Dash Wright, resulting in physical harm. *Id.*

**{¶90}** As the murder charge herein is based on the predicate offense of child endangering, we find that the trial court correctly instructed the jury that proof that Appellant recklessly abused Dash Wright is sufficient to establish the requisite mental state to convict Appellant of murder under R.C. 2903.02(B).  *See State v. Cherry*, 9th Dist. App. No. 207771, 2002-Ohio-3738.

**{¶91}**  Appellant's sixth Assignment of Error is overruled.

## VIII.

**{¶92}**  In his eighth Assignment of Error, Appellant argues that he was denied the effective assistance of counsel.  We disagree.

**{¶93}**  Our standard of review is set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. *Id.* Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie* (1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267.

**{¶94}** Appellant herein argues that his counsel was ineffective in failing to move for a directed verdict based on the alleged errors raised in the previous assignments of error. Having addressed such and having found no error, we find no evidence that counsel's performance in this matter fell below an objective standard of reasonableness. Further, we find that Appellant has failed to show that the outcome would have been different but for such alleged errors.

**{¶95}** Appellant's eighth Assignment of Error is overruled.

**IX**.

**{¶96}** In his ninth Assignment of Error, Appellant argues that he was denied a fair trial based on cumulative error. Specifically, Appellant alleges that the errors outlined in his previous eight assignments of error amount to cumulative error requiring reversal. We disagree.

**{¶97}** In *State v. Brown,* 100 Ohio St.3d 51, 2003–Ohio–5059, 796 N.E.2d 506, the Ohio Supreme Court recognized the doctrine of cumulative error. However, as explained in *State v. Bethel,* 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150, ¶ 197, it is simply not enough to intone the phrase "cumulative error." *State v. Sapp,* 105 Ohio St.3d 104, 2004-Ohio-7008, 822 N.E.2d 1239, ¶ 103.

**{¶98}** Here, Appellant raises the doctrine of cumulative error but gives no analysis or explanation as to why or how the errors have had a prejudicial cumulative effect. Thus, this Assignment of Error has no substance under *Bethel* and *Sapp.*

**{¶99}** Where we have found that the trial court did not err, cumulative error is simply inapplicable. *State v. Carter,* 5th Dist. No. 2002CA00125, 2003-Ohio-1313 at ¶ 37. To the extent that we have found that any claimed error of the trial court was

harmless, or that claimed error did not rise to the level of plain error, we conclude that the cumulative effect of such claimed errors is also harmless because taken together, they did not materially affect the verdict. *State v. Leonard,* 104 Ohio St.3d 54, 89-90, 2004-Ohio-6235, 818 N.E.2d 229, 270 at ¶ 185.

**{¶100}** As this case does not involve multiple instances of error, Appellant's ninth Assignment of Error is overruled.

**{¶101}** For the foregoing reasons, the judgment of the Court of Common Pleas of Muskingum County, Ohio, is affirmed.


By: Wise, J.

Hoffman, P. J., and

Farmer, J., concur.


_____


_____


_____

JUDGES


JWW/d 0409

IN THE COURT OF APPEALS FOR MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO                                :
                                             :
    Plaintiff-Appellee               :
                                             :
-vs-                                         :               JUDGMENT ENTRY
                                             :
DALE C. WRIGHT                               :
                                             :
    Defendant-Appellant              :               Case No. CT2011-0046


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Muskingum County, Ohio, is affirmed.

Costs assessed to Appellant.


_____

_____

_____

JUDGES